FILED

2015 Sep-30  PM 05:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DUASJER STEVENS,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:14-cv-02026-MHH** |
| | } | |
| **GFC LENDING, LLC,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

## I.    Introduction

This matter is before the Court on GFC Lending's motion to dismiss or to compel arbitration, strike class allegations, and stay proceedings.  (Doc. 14). Duasjer Stevens alleges that GFC violated the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691a–1691f, by failing to send her timely written notification of the denial of her credit application and the reasons for it.  (Doc. 13, ¶¶ 26-43).[1]   Ms. Stevens seeks to pursue her claim by certifying a class of consumers who did not receive timely notice when GFC denied their applications for credit.  (Doc. 13, ¶ 17).   GFC contends that Ms. Stevens lacks standing to

---

[1]  Ms. Stevens's amended complaint is the operative pleading in this action.  *See* Doc. 12; *Pace v. Peters*, 524 Fed. App'x 532, 536 (11th Cir. 2013) ("Under the Federal Rules of Civil Procedure, 'an amended complaint supersedes the initial complaint and becomes the operative pleading in the case.'") (quoting *Krinsk v. SunTrust Banks, Inc.,* 654 F.3d 1194, 1202 (11th Cir. 2011)).

pursue her claim because she has not shown that she was injured by GFC's failure to provide timely notice.  (Doc. 14, pp. 12–16).  Alternatively, GFC argues that Ms. Stevens should be required to arbitrate her claim.  (Doc. 14, pp. 6–11).  For the reasons stated below, the Court denies GFC's motion.

## II.    <u>Factual Background</u>

On June 13, 2014, Ms. Stevens "went shopping for a personal vehicle at Champion [Automotive]."  (Doc. 13, ¶ 11).  After selecting a vehicle, Ms. Stevens filled out a credit application, which employees of Champion sent to GFC.  (Doc. 13, ¶ 12).  GFC denied Ms. Stevens's application for credit.  (Doc. 13, ¶ 12).

Ms. Stevens did not receive an adverse action notice within 30 days of GFC's denial of her credit application.  (Doc. 13, ¶ 12).  In a statement of adverse action dated August 24, 2014 and mailed to Ms. Stevens, GFC informed Ms. Stevens in writing that her request for credit had not been approved.  (Doc. 13, ¶¶ 13–16; Doc. 13-1).  Ms. Stevens alleges that her delayed receipt of a written statement of adverse action caused her to suffer the following injuries:  "the loss of her rights to determine the basis for credit denial, the loss of her right to obtain a free copy of her credit report, the potential exposure to discrimination, her loss of the credit itself, frustration, anger, humiliation, fear, embarrassment and other emotional and mental anguish."  (Doc. 13, ¶ 37).

Ms. Stevens did not sign an arbitration agreement with GFC in 2014, but she did sign a stand-alone arbitration agreement with GFC on November 30, 2012. (Doc. 6-5). That four-page arbitration agreement pertained to a separate vehicle sales transaction. (*Compare* Doc. 6-5 and Doc. 13-1). GFC attempts to compel arbitration of Ms. Stevens' ECOA claim pertaining to her 2014 credit application under the terms of the 2012 arbitration agreement. (Doc. 14).

III.   **Discussion**

   **A. Standing**

GFC's standing argument implicates the Court's jurisdiction over Ms. Stevens's action.

> "[B]ecause the constitutional standing doctrine stems directly from Article III's 'case or controversy' requirement, this issue implicates our subject matter jurisdiction, and accordingly must be addressed as a threshold matter regardless of whether it is raised by the parties." When analyzing a defendant's "motion to dismiss we must evaluate standing based on the facts alleged in the complaint, and we may not 'speculate concerning the existence of standing or piece together support for the plaintiff.'"

*Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, --- F.3d ----, 2015 WL 4709573, *16 (11th Cir. Aug. 7, 2015) (quoting *Nat'l Parks Conservation Ass'n v. Norton,* 324 F.3d 1229, 1242 (11th Cir. 2003), and *Shotz v. Cates,* 256 F.3d 1077, 1081 (11th Cir. 2001)).

Federal courts, as courts of limited jurisdiction, may hear only those cases that have been entrusted to them by the United States Constitution and a Congressional grant of authority. *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999). The Constitution restricts the jurisdiction of federal courts to "Cases" and "Controversies," as those terms are understood within the context of Article III of the Constitution. U.S. Const. art. III, § 2, cl. 1. "[T]he doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).

At a minimum, a plaintiff wishing to establish standing to sue must show an injury in fact that has been caused by the defendant and that is capable of being redressed by the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *see also Duty Free Americas,* 2015 WL 4709573, at *16. An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations and quotation marks omitted).

GFC argues that Ms. Stevens has alleged "potential injuries" that are too "abstract, conjectural, or hypothetical in nature" to satisfy the requirements of Article III. (Doc. 14, pp. 13–14). Some of the injuries that Ms. Stevens alleges, such as "potential exposure to discrimination," may be too conjectural or

4

hypothetical.  (Doc. 13, ¶ 36).  However, Ms. Stevens's central contention is not at all conjectural or abstract.  Under the ECOA, Ms. Stevens was entitled to written notification of GFC's action on her credit application within thirty days of June 13, 2014, the date on which GFC received the completed application.  15 U.S.C. § 1691(d)(1).  Because GFC denied her application, Ms. Stevens also was entitled to a written statement of the reasons for the denial.  15 U.S.C. § 1691(d)(2); 12 C.F.R. §§ 1002.9(a)(1)(i), (a)(2).  GFC did not prepare a statement of adverse action until August 24, 2014.  As a consequence, Ms. Stevens asserts that she lost her right to determine the basis for the denial of her credit application, lost the right to obtain a free copy of her credit report, lost credit, and suffered emotional and mental anguish.  (Doc. 13, ¶¶ 36–37).  These alleged injuries, if proven, constitute actual losses for which Ms. Stevens may recover damages.  *See Oden v. Vilsack*, No. 1000212, 2013 WL 4046456, at *13 (S.D. Ala. Aug. 9, 2013) (describing mental anguish as a form of actual damages available under the ECOA); *Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143, 148 (5th Cir. 1983) ("[U]nder § 1691e, . . . actual damages may include out-of-pocket monetary losses, injury to credit reputation and mental anguish, humiliation or embarrassment.").[2]

---

[2]  GFC argues that "Duasjer cannot avoid the import of her own previous allegations.  In her original complaint, Duasjer expressly alleged that she learned almost immediately after she submitted her credit application that it had been denied by GFC, and that as a result she therefore could not purchase the car she wanted. Doc. 1 at ¶¶ 12-13.  She further alleged that she was told by the dealership that due to her credit history, 'she would need a co-signer in order to get approved.' *Id.* at ¶ 12."  (Doc. 14, p. 12; *see also* Doc. 17, p. 6).  GFC's argument fails in a

Citing two opinions that are not binding Eleventh Circuit precedent,[3] GFC argues that "[a] federal 'statutory violation alone will not suffice to create standing.'"  (Doc. 17, p. 10) (quoting *Morales v. U.S. Dist. Court for the Southern Dist. of Fla.*, 580 Fed. App'x 881, 886–87 (11th Cir. Oct. 15, 2014), and *Trujillio v. Florida*, 481 Fed. App'x 598 ([11th Cir. July 23,] 2012)).  The law in this circuit is not as clear as GFC suggests.  In a decision that is binding on this Court, the Eleventh Circuit noted that, "Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute."  *United States v. Weiss*, 467 F.3d 1300, 1311 (11th Cir. 2006) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 (1973)).  By enacting the ECOA, Congress created a legal right to timely written information regarding credit

---

variety of ways.  First, Ms. Stevens can avoid her initial complaint because, as the Court has noted, the amended complaint is now the operative pleading in this action.  *See* note 1, *supra*. Second, GFC's liberal reading of Ms. Stevens's original complaint is unpersuasive.  In her original complaint, Ms. Stevens did not allege that *she* learned at the dealership that her credit application had been denied or that the dealership told her that she would need a co-signer "due to her credit history."  Ms. Stevens alleged only that GFC denied her credit application and that an employee of the dealership told her that she needed a co-signor for her loan to be approved. (Doc. 1, ¶ 12).  Ms. Stevens alleged that after her brother arrived at the dealership and provided his credit information, she and her brother "were told that they had been approved."  (Doc. 1, ¶ 14).  Neither Ms. Stevens's original complaint nor her amended complaint contains an allegation that she received information about the basis for GFC's credit decision on June 13, 2014.  Discovery may bring to light facts that substantiate GFC's arguments, but the Court may not assume the truth of GFC's factual arguments at this stage of the litigation.  At this stage, the Court is limited to the actual allegations in Ms. Stevens's amended complaint.  And even if, as GFC argues in its expansive reading of the amended complaint, someone at the dealership told Ms. Stevens that her application was denied due to her credit history, that oral statement would not eliminate the alleged ECOA violation or the alleged consequent damages.  *See Fischl v. General Motors Acceptance Corp.*, *supra*.

[3] 11th Cir. Rule 36-2, 28 U.S.C.A. Rule 36-2.

decisions and provided for the private enforcement of that right by "aggrieved applicants." *See* 15 U.S.C. § 1691e(a) ("Any creditor who fails to comply with any requirement imposed under this subchapter shall be liable to the aggrieved applicant for any actual damages sustained by such applicant acting either in an individual capacity or as a member of a class."). The provisions of the ECOA sufficiently "identify the injury [Congress] seeks to vindicate and relate the injury to the class of persons entitled to bring suit." *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in the judgment).

The United States Supreme Court has acknowledged that being denied information can confer standing because "a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21 (1998). Ms. Stevens's circumstances present an even stronger argument for standing given that she was denied information concerning her own creditworthiness, not simply information that might be of equal interest to any member of the public. Ultimately, though, the point is academic for purposes of this action because Ms. Stevens has alleged actual injuries. Ms. Stevens has identified consequences of "an invasion of a legally protected interest" that are both "concrete and particularized," that GFC caused, and for which the Court may provide a remedy

via an award of damages pursuant to § 1691e(a). Therefore, the Court finds that Ms. Stevens has standing to proceed with her suit.

### B. Arbitration

The Federal Arbitration Act ("FAA") provides that an agreement to arbitrate a dispute "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Pursuant to the FAA, a claim is arbitrable if the following three criteria are satisfied: (1) there is a valid agreement to arbitrate; (2) the claim falls within the scope of the agreement to arbitrate; and (3) the claim, if a statutory one, must not be one which the legislative body enacting it intended to be precluded from arbitration." *Vanhorn v. Locklear Auto. Grp., Inc.*, No. 2:15-CV-467, 2015 WL 4470320, at *2 (N.D. Ala. July 22, 2015) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)). "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in *Byrd*).

When a party petitions for an order compelling arbitration, a court must issue the order "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue . . . ." 9 U.S.C. § 4. To

determine if parties have made an agreement to arbitrate a dispute, courts apply the legal standards imposed on contracts generally. *See AT & T Technologies, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986); *see also McDougle v. Silvernell*, 738 So. 2d 806, 808 (Ala.1999) ("Whether a contract to arbitrate exists must be determined under general state-law contract principles"). GFC and Ms. Stevens agree that they executed an arbitration agreement in November 2012 with regard to the purchase of another vehicle. (*See* Doc. 16, p. 3; Doc. 14, p. 7; Doc. 6-5). The question before the Court is whether that arbitration agreement covers the transaction between Ms. Stevens and GFC that is the basis of this suit. The Court finds that it does not.

A court should not deny "[a]n order to arbitrate the particular grievance . . . unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Technologies*, 475 U.S. at 650 (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83 (1960)). Even with the presumption in favor of arbitrability in mind, the Court can find no basis for stretching the scope of the GFC arbitration agreement that Ms. Stevens signed in 2012 to cover Ms. Stevens's unrelated application for credit in 2014. By its terms, the 2012 agreement is focused on the transaction taking place in 2012. The heading of the 2012 agreement contains spaces for entering the "Deal ID" and "Contract Number" to

9

which the agreement applies, and the agreement repeatedly refers to "the Contract" and "the vehicle." (Doc. 6-5, pp. 2–3). The 2012 agreement defines its own scope in terms of a "Claim" and then specifies that a "'Claim' means any claim, dispute or controversy . . . arising from or related to" a list of twelve items that are aspects of the 2012 transaction. (Doc. 6-5, p. 3).

The 2012 agreement also defines "Contract" to include a "prior Retail Installment Contract and Security Agreement," but not a future one. (Doc. 6-5, p. 2). "'The doctrine of *expressio unius est exclusio alterius* instructs that when certain matters are mentioned in a contract, other similar matters not mentioned were intended to be excluded.'" *In re Celotex Corp.*, 487 F.3d 1320, 1334 (11th Cir. 2007) (quoting *Plumbers & Steamfitters Local No. 150 Pension Fund v. Vertex Constr. Co.*, 932 F.2d 1443, 1449 (11th Cir.1991)). Thus, the 2012 agreement's reference only to prior contracts and agreements indicates that GFC did not intend the 2012 arbitration agreement to cover future agreements. In cases in which courts have concluded that an arbitration agreement extends to future interactions between the parties, the arbitration agreement has contained express language referencing future claims, agreements, or relationships. *See, e.g.*, *Anderson v. Waffle House, Inc.*, 920 F. Supp. 2d 685, 687 (E.D. La. 2013) (arbitration agreement explicitly covered "all claims and controversies ('claims'), past, present, or future"); *Southland Health Servs., Inc. v. Bank of Vernon*, 887 F.

Supp. 2d 1158, 1164 (N.D. Ala. 2012) (arbitration agreement covered all disputes "based upon any prior, current, or future agreement, loan, account, service, activity, transaction (proposed or actual), event or occurrence"); *Wickersham v. Lynch Motor Co. of Auburn*, No. 3:11CV280, 2012 WL 715322, at *3 (M.D. Ala. Mar. 6, 2012) (parties agreed to arbitrate any disputes that "arise out of or relate to any past or future transactions or dealings between" them); *CitiFinancial Corp. v. Peoples*, 973 So. 2d 332, 334 (Ala. 2007) ("'Claim' means any case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing between You and Us."). Such language is notably absent from the 2012 agreement between GFC and Ms. Stevens.

GFC contends that three provisions of the 2012 agreement establish its continuing nature: the reference to "all disputes" in the notice section, the defining of "Claim" to have "the broadest reasonable meaning," and the survival provision. (Doc. 6, pp. 7–8; Doc. 14, pp. 8–9; Doc. 6-5, pp. 2, 3, 5). As an initial matter, "[w]ritten documents 'are to be construed as a whole so as to harmonize their parts whenever possible.'" *Guardian Builders, LLC v. Uselton*, 154 So. 3d 964, 972 (Ala. 2014) (quoting *Dudley v. Fridge*, 443 So. 2d 1207, 1211 (Ala. 1983)). While each of the three provisions cited by GFC can be read in harmony with an arbitration agreement that governs only the 2012 transaction, reading them to

govern all future transactions requires disregarding related provisions that narrow the cited provisions' scope.

In the sentence following the reference to "all disputes" in the notice section, the 2012 agreement specifies that if either party elects to arbitrate a dispute, Ms. Stevens will be giving up her right to go to court "to assert or defend [her] rights under *the Contract*." (Doc. 6-5, p. 2) (emphasis supplied). As is apparent throughout the 2012 agreement, the "disputes" contemplated by the agreement are those related to the 2012 transaction. Next, immediately after stating that "'Claim' has the broadest reasonable meaning," the 2012 agreement elaborates that the term "includes claims of every kind and nature" and then lists a variety of legal claims. (Doc. 6-5, p. 3). In the context of the 2012 agreement, "the broadest reasonable meaning" the Court could give to "Claim" is that it extends to any action Ms. Stevens might bring with regard to the 2012 transaction. There is no reasonable basis for interpreting that language to extend to future transactions between Ms. Stevens and GFC. Finally, the survival provision, found under the heading "Miscellaneous," provides that the 2012 agreement "survives payment of all you owe under the Contract. It also survives your bankruptcy and any sale by us of your Contract." (Doc. 6-5, p. 5). The plain meaning of the provision is that Ms. Stevens cannot avoid her obligation to arbitrate a claim arising from the 2012 transaction simply because she has paid everything she owed for the vehicle, she

12

has declared bankruptcy, or GFC has sold her contract.  GFC's attempt to broaden

the scope of the 2012 agreement's narrow provisions through reference to more

general provisions runs counter to the rule of contract construction "that a specific

provision prevails over a general provision relating to the same subject matter."

*Ward v. Check Into Cash of Alabama, LLC*, 981 So. 2d 434, 438 (Ala. Civ. App.

2007) (citing *ERA Commander Realty, Inc. v. Harrigan*, 514 So. 2d 1329

(Ala.1987)).

GFC essentially argues that the 2012 agreement constituted a lifelong

commitment on the part of Ms. Stevens to arbitrate any disputes she might have

with GFC.  Given GFC's business model, in which subprime auto financing is

provided through third-party automobile dealerships, Ms. Stevens would have little

advance warning that a particular potential future transaction was going to be

governed by the 2012 agreement under GFC's theory.  (*See* Doc. 13, ¶ 5).  In

addition, GFC's argument requires accepting that a lifelong commitment

potentially affecting numerous future transactions could be created *sub silentio* in

an agreement that never mentions future transactions.  GFC's argument asks too

much.   The presumption in favor of arbitration stops short of compelling

arbitration when a party did not agree to arbitrate.  *Jim Walter Res., Inc. v. United

Mine Workers of Am.*, 663 F.3d 1322, 1325 (11th Cir. 2011) ("[A]rbitration is a

matter of contract and a party cannot be required to submit to arbitration any

dispute which he has not agreed so to submit.") (quoting *Warrior & Gulf*, 363 U.S. at 582).  Therefore, the 2012 arbitration agreement does not apply to Ms. Stevens's 2014 application for credit.[4]

## Conclusion

For the reasons discussed above, the Court DENIES GFC's motion to dismiss or compel arbitration, strike class allegations, and stay proceedings.  The Clerk is directed to please TERM Doc. 14.

**DONE** and **ORDERED** this September 30, 2015.

_____

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

_____

[4] In its motion to dismiss or compel arbitration of the claims in Ms. Stevens's original complaint, GFC attempted to compel Ms. Stevens to arbitrate her claim because Ms. Stevens's brother, Dubar, signed an arbitration agreement with GFC in 2014. (Doc. 14, pp. 9–10; Doc. 6, pp. 14–16).  Ms. Stevens's amended complaint limits its allegations to conduct that does not involve Dubar. (Doc. 13, ¶¶ 10–16).  Therefore, GFC's arguments are misplaced.  In addition, the Court finds that the facts as alleged by Ms. Stevens do not fit any of the four situations in which "a nonparty to an arbitration agreement may compel or be compelled to arbitration under Alabama law . . ." *Hanover Ins. Co. v. Atlantis Drywall & Framing LLC*, 611 Fed. Appx. 585, 589 (11th Cir. 2015).  The four situations are as follows: First, the nonparty signed a contract that incorporates the arbitration agreement by reference.  *Id.*  Second, the nonparty signed a document that should be read together with the arbitration agreement because the documents were part of a single transaction.  *Id.*  Third, "Alabama will enforce an arbitration provision in a contract to which the party moving for arbitration is not a signatory if the party is a third-party beneficiary of the contract containing the arbitration provision."  *Id.* at 590.  Fourth, the doctrine of "intertwining" applies.  *Id.*  Intertwining requires closely related arbitrable and nonarbitrable claims and "that 'the signatory to the arbitration agreement is or will be engaged in an arbitration proceeding with the plaintiff.'"  *Id.* (quoting *Jenkins v. Atelier Homes, Inc.*, 62 So. 3d 504, 512 (Ala. 2010)).  None of these situations describes the relationships among GFC, Dubar, and Ms. Stevens.  Ms. Stevens did not sign a document relating to the 2014 sales transaction.  Assuming *arguendo* that she is a third-party beneficiary of that transaction, she is not attempting to compel arbitration; GFC, a signatory, is.  And GFC has identified no related pending arbitration proceedings to which the doctrine of intertwining might apply.